PENACHIO MALARA, LLP
Counsel for the Debtors
235 Main Street, Suite 610
White Plains, NY 10601
Anne Penachio, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

          Chapter 11

   ERIC DAVID VALCICH and
   JENNA MARIE COSMO,          Case No.: 13-22035 (RDD)

                 Debtors.

-------------------------------------------------------------------X

# DISCLOSURE STATEMENT FOR CHAPTER 11 SECOND AMENDED PLAN OF REORGANIZATION
## PROPOSED BY THE DEBTORS

Table of Contents

I. PURPOSE OF THIS DISCLOSURE STATEMENT ...................................................1

II. DISCLAIMER ........................................................................................................3

III. BACKGROUND CONCERNING THE DEBTORS, THE BANKRUPTCY
     FILING AND THE ADMINISTRATION OF THE DEBTORS' ESTATE .................4

   A. Background Concerning the Debtors and Their Bankruptcy Filing ...................................... 4

   B. Claims..................................................................................................................... 7

   C. Assets..................................................................................................................... 8

   D. Income and Expenses ............................................................................................ 8

IV. SUMMARY OF PLAN PROVISIONS..................................................................9

V. SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS ............................11

   A. Statutory Fees........................................................................................................ 11

   B. Administrative Claims............................................................................................ 11

   C. Classes of Creditors .............................................................................................. 13

VI. DISTRIBUTIONS UNDER AND IMPLEMENTATION OF THE PLAN...........................14

VII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............................................14

VIII. CAUSES OF ACTION .......................................................................................15

IX. LEGAL EFFECTS OF CONFIRMATION OF THE PLAN ..................................16

X. RETENTION OF JURISDICTION .........................................................................17

XI. CONDITIONS TO CONFIRMATION, EFFECTIVE DATE AND
    CONSUMMATION OF THE PLAN ...........................................................................18

XII. IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE.......................19

XIII. GENERAL INFORMATION REGARDING CONFIRMATION PROCEDURE
     AND VOTING.........................................................................................................22

   A. Plan Confirmation Process .................................................................................... 22

B. Confirmation Hearing.................................................................................................... 23

C. Objections to Confirmation ........................................................................................... 23

D. Voting on the Plan......................................................................................................... 24

XIV. FEASABILITY OF THE PLAN ....................................................................................27

XV. BEST INTERESTS.........................................................................................................27

XVI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
      PLAN .......................................................................................................................28

XVII. RECOMMENDATION AND CONCLUSION ................................................................30

## I.  <u>PURPOSE OF THIS DISCLOSURE STATEMENT</u>

**ERIC DAVID VALCICH and JENNA MARIE COSMO**, the debtors and debtors-in-possession herein (together, the "Debtors"), provide this Disclosure Statement (the "Disclosure Statement"), pursuant to § 1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all of their known creditors and other parties in interest for the purpose of soliciting acceptances of their proposed Seconded Amended Chapter 11 Plan of Reorganization dated August 10, 2017 (the "Plan")  A copy of the Plan is attached as <u>Exhibit A</u> hereto. The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and a copy of it is attached hereto as Exhibit A. By Order dated August 10, 2017, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtors' creditors to make an informed decision whether to accept or reject the Plan. The Debtors strongly urge you to read this Disclosure Statement because it contains a summary of the Plan and important information concerning the Debtors' financial affairs, the administration of the Debtors' bankruptcy Estate[1] and the anticipated recovery by creditors of the Debtors.

The primary objective of the Plan is to provide a mechanism for the resolution of the Debtors' outstanding creditor Claims and for distributing the Debtors' property to satisfy those Claims. The terms of the Plan have been developed in the context of providing what the Debtors believe will be the greatest return to the creditors.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Plan.

The Debtors submit this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code to all known holders of a Claim against them who are entitled to vote to accept or reject the Plan. The purpose of this Disclosure Statement is to provide Claimants with adequate information that would enable a reasonable person to make an informed judgment in voting on the Plan.

Detailed voting instructions are provided with the Ballot accompanying this Disclosure Statement. As more fully described herein, the Allowed Secured Claims in Class 1 and Allowed Priority Claims in Class 2 are not entitled to vote on the Plan because they are unimpaired under the Plan. The Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan. Briefly, to vote on the Plan, a voting holder of a Claim must complete and sign the Ballot and mail it so that it is received no later than the Voting Deadline, which is 5:00 p.m. (Prevailing Eastern Time) on September 13, 2017 at the offices of Penachio Malara, LLP, 235 Main Street, Suite 610, White Plains, NY 10601. Votes may not be transmitted orally. If a Ballot is damaged or lost, you may contact Penachio Malara, LLP at (914) 946-2889 or apenachio@pmlawllp.com to receive another.

Any Ballot that is executed and returned but which does not indicate an acceptance or rejection of the Plan will not be counted. Accordingly, the Debtors urge all voting holders of Allowed General Unsecured Claims to promptly return their signed and completed Ballots.

A hearing to consider the Debtors' request for Confirmation of the Plan will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Robert D. Drain, The Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, NY 10601 September 20, 2017 at 10:00 AM

## II. DISCLAIMER

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NOASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THIS DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN. TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL. TERMS USED IN THIS DISCLOSURE STATEMENT BUT THAT ARE NOT OTHERWISE DEFINED HEREIN HAVE THE MEANING ASCRIBED TO THEM IN THE PLAN AND, IF NOT DEFINED IN THE PLAN, THEN IN THE BANKRUPTCY CODE.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE EQUIVALENT OF A STATEMENT MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTORS' CHAPTER 11 CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTORS BELIEVE THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTORS' BOOKS AND RECORDS AND PUBLIC PLEADINGS. ALTHOUGH DILIGENT EFFORTS HAVE BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTORs ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT SOME INACCURACY OR OMISSION.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMPNE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER

PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTORS. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTORS IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

THE DISCLOSURE STATEMENT ORDER, A COPY OF WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN. A FORM BALLOT FOR VOTING ON THE ACCEPTANCE OR REJECTION OF THE PLAN IS ALSO PROVIDED HEREWITH. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN AND THE DISCLOSURE STATEMENT ORDER IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

### III.  BACKGROUND CONCERNING THE DEBTORS, THE BANKRUPTCY FILING AND THE ADMINISTRATION OF THE DEBTORS' ESTATE

#### A.  Background Concerning the Debtors and Their Bankruptcy Filing

The Debtor Eric David Valcich, who is in his early 50's, is self employed as a mortgage broker and business consultant. His income fluctuates. It averages approximately $8,000.00 per month. The Debtor Jenna Marie Cosmo, who is in her early 40's, is employed part-time as a nursery school teacher. Her income is relatively small, totaling approximately $6,000.00 per year. The Debtors have three children, two of whom are school-aged and one of whom is in pre-school. As the Debtors' children get older, the Debtor Jenna Marie Cosmo anticipates that her income will increase as she hopes to procure additional part-time employment.

The Debtors began to experience financial reversals in 2007 due to a combination of adverse circumstances including the collapse of the real estate market, loss of income, and an increase in expenses. On January 11, 2013, the Debtors filed for Chapter 13 relief in an effort to

4

deal with consumer debt and mortgage arrears. Their liabilities exceeded the limitations imposed on Chapter 13 debtors by Section 109 of the Bankruptcy Code, however. Accordingly, on April 25, 2014, the Debtors' Chapter 13 case was converted to a case under Chapter 11 of the Bankruptcy Code.

The Debtors' prior attorney, Medina & Torrey, P.C., withdrew from representation, as the firm ceased operating. The Debtors retained the undersigned counsel in December 2014.

1. **The Home**

The Debtors' primary asset is their home located at 65 High Street, Armonk, New York 10504 (the "Home") which they own jointly. The Home has been valued at $ 575,000.00. A copy of an appraisal submitted in connection with this case is annexed hereto as Exhibit B. The Debtors believe that the value has not changed, since the appraisal as the real estate market in Northern Westchester County has not materially improved.

Select Portfolio Servicing, Inc., as servicer for Bank of New York Mellon Trust Company, NA ("SPS"), holds a first mortgage on the Home with a principal balance of approximately $575,000.00. SPS modified the mortgage during this case. However, a formal order approving the modification was not entered by the Court.[2] In furtherance of the modification, SPS filed a Notice of Mortgage Change annexed hereto as Exhibit C. The Notice reflects the fact that the Debtors' modified monthly payment to SPS is $2,475.00. The Debtors have remained current with their

---

[2] Prior counsel did not move for Court approval. To the extent required the undersigned counsel will be preparing a motion for approval forthwith.

obligations to SPS under the modified agreement. Under the Plan, the Debtors' will continue meeting their contractual obligations to SPS as modified.

Green Tree Services LLC ("Green Tree") held a junior lien on the Home totaling approximately $202,958.20. In accordance with 11 U.S.C. § 506 and In re Pond, 252 F.3d 122 (2d Cir. 2001), on March 21, 2014, this junior lien was avoided by this Court. A copy of the Order is annexed hereto as Exhibit D. The wholly Unsecured Claim of Green Tree, under such Order, shall be treated as a General Unsecured Claim under the Plan.

## 2.  The Florida Property

The Debtor Eric Valcich owns an investment property at 679 Windmere Way, Palm Beach Gardens, Florida (the "Florida Property"). The Florida Property has been valued at $245,000.00. An appraisal is annexed hereto as Exhibit E. The Florida Property is in the same development as the Debtor's elderly parents' home. The Debtors periodically rent the Florida Property, generally during the winter months. The annual rental is approximately $24,000.00 per year.

Waterfall Victoria Masterfund Ltd. ("WVM") holds a mortgage on the Florida Property with a principal balance due of approximately $349,776.52. The loan is serviced by Statebridge Company, LLC as successor to ClearSpring Loan Services, Inc. During this case, the Debtors moved to value WVM's claim at $245,000.00. WVM opposed the motion, which was filed as ECF # 81. Following extensive discussions, WVM and the Debtors agreed to resolve the motion pursuant to the following principal terms, which has been memorialized in writing: (i) Waterfall's secured claim is valued at $260,000.00; (ii) the interest rate is fixed at 5%; (iii) monthly payments are $1,400.00; (iv) the Debtors will pay insurance costs and common charges; and (v) WVM will waive the purported restriction on rental.

6

Maintaining the Florida Property will cost the Debtors an estimated $450.00 per month after revenue from rental is applied to expenses as reflected in the budget annexed hereto as Exhibit F. The Debtor's parents have agreed to fund this amount as set forth in the affirmation of contribution annexed hereto as Exhibit G.

## B. Claims

The Debtors' unsecured creditors include (i) income tax obligations to the Internal Revenue Service (the "IRS") in the amount of approximately $11,258.56; (ii) the deficiencies on the Secured Claims of Greentree and WVM totaling approximately $350,000.00; and (iii) consumer debt in the amount of approximately $445,000.00. A schedule of Claims and the Claims Register are annexed hereto as Exhibit H.

New York State filed Claim numbered 24 in the amount of $42,183.06 of which $34,995.42 was classified as a Priority Claim (Dkt. 122). On October 12, 2016, following a challenge by the Debtors, NYS withdrew its Claim in its entirety.

The last date by which proofs of Claim for pre-Petition Date obligations of the Debtors had to be filed was May 23, 2013, as set in the Chapter 13 case. A total of twenty-seven (27) proofs of Claim were filed against the Debtors, all of which comported substantially with the liquidated, non-contingent and/or undisputed Claims identified in the Debtors' Schedules. They included the following approximate claims:

1.    Secured Claims of SPS .............................$571,708.42

2.    Priority claims (Taxes) ................................$10,752.19

7

    3.      Unsecured claims (including the
           Unsecured Claims of Greentree and
           WVM) ........................................................$445,300.57

The Debtors and their attorney undertook an analysis of the filed Claims in an effort to reconcile the same. Upon conclusion of the analysis, it was determined that the vast bulk of the Claims asserted had merit, and thus were not subject to any objection by the Debtors.

## C.  Assets

The Debtors have limited assets. As set forth on the liquidation analysis annexed hereto as Exhibit I, the Debtors' assets have virtually no liquidation value after their statutory exemptions. Indeed, the total liquidation value of non-exempt assets is estimated to be less than $15,000.00. Accordingly, other than their Cash on hand, none of the Debtors' assets could be reasonably used to fund a Chapter 11 plan.

## D.  Income and Expenses

The Debtors will instead fund their Plan with future income. This will result in a greater recovery to all creditors than if the Debtors' assets were liquidated in a Chapter 7 case. A household budget (the "Budget") is annexed hereto as Exhibit J. The Debtors have conducted an evaluation of their projected net disposable future income to determine whether they can reasonably make a distribution to their creditors from future earnings while reserving therefrom enough money to meet their reasonable and ordinary living expenses. The Debtors will fund the Chapter 11 Plan's treatment of Allowed Administrative Claims, Class 2 Priority Claims and Class 3 General Unsecured Claims with payments aggregating $90,000.00, comprised of $15,000.00 paid on the Effective Date and the balance of $75,000.00 payable to the Disbursing Agent in monthly installments of $1,500.00 for fifty (50) months.  The Disbursing Agent shall, in turn, make Pro

Rata Distributions to holders of Class 3 claims at least quarterly.  Distributions will be made by the Disbursing Agent. Debtors' counsel has agreed to act as the Disbursing Agent subject to Court approval. Debtors' counsel shall act in conjunction with the Debtors. Alternatively, should it be necessary to retain an independent Disbursing Agent, the Debtors will seek the appointment of Jeff Sapir as Disbursing Agent and seek his compensation to be fixed at 10% of Distributions.

As reflected in the Budget, the Debtors' current monthly income totals approximately $8,500.00 and their total monthly household expenses total approximately $7,000.00.  Thus, under the Plan, the Debtors are contributing their projected disposable income as provided in §1129(a)(15) of the Bankruptcy Code.  It should be noted that the Debtors' income is fairly consistent on an annual basis but varies monthly with some months more productive than others. The Debtors anticipate that they will have sufficient income to cover their living expenses and permit funding of the Plan.

The Debtors have endeavored to keep their expenses to a minimum and to spend their income in a responsible manner. The Debtors have reduced their monthly expenses during the pendency of their Chapter 11 Case. The reduction was achieved through general cut backs. The Debtors are current with all post-Petition Date expenses, including taxes. Allowed legal fees will be paid pursuant to the Plan.

## IV.  SUMMARY OF PLAN PROVISIONS

As hereinafter more fully discussed, the Plan proposed by the Debtors provides for, among other things:

(a)     the funding of the Plan's treatment of Statutory Fees and Allowed Administrative, Priority and General Unsecured Claims by the Debtors with $90,000.00 (the "Plan Cash") payable (i) with an initial payment of $15,000.00 and (ii) $75,000.00 over fifty (50) monthly installments of $1,500.00;

9

(b)     the payment in full of all Statutory Fees on the Effective Date of the Plan;

(c)     the payment in full of all Allowed Administrative Claims by the Disbursing Agent over time;

(d)     the payment in full of SPS's Allowed Secured Claim representing its modified first mortgage debt, pursuant to the terms set forth in the loan modification agreement;

(e)     the payment in full of WVM's Allowed Secured Claim representing its modified first mortgage debt, pursuant to the terms set forth in the agreement between the Debtors and WVM and described herein;

(f)     the payment in full of Priority Claims on the Effective Date;

(g)     the payment, after satisfaction of all Administrative and Priority Claims, of the remaining Plan Cash, Pro Rata, to the holders of Allowed General Unsecured Claims. The Debtors believe that the sum will be at least $40,000.00, equal to approximately 10% of the Allowed Unsecured Claims; and

(h)     No interest post-Petition Date or post-Effective Date will accrue on any Claims except as to the Allowed Secured Claims of SPS and WVM, which will accrue interest as provided for in the respective agreements between each creditor and the Debtors.

The Effective Date shall be the first business day that is fourteen days after the Confirmation of the Plan.

The overall purpose of the Plan is to distribute a portion of the Debtors' future earnings to the Debtors' creditors and to restructure the Debtors' liabilities on a fair and equitable basis in accordance with the priorities established by law. The Plan represents the culmination of the analyses conducted and efforts expended by the Debtors and their attorney concerning the best means to maximize and allocate value to the Debtors' unsecured creditors. The Debtors have determined that the Plan provides the highest value to creditors and greatly exceeds any value that might otherwise be achievable in liquidation under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors recommend that the Plan be accepted by their creditors.

10

## V.  SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS

Under the Plan, Claims against the Debtors are grouped into Classes according to their similarity with other Claims and their relative legal and contractual priorities. All Allowed Claims, other than Statutory Fees and Administrative Claims, are placed into Classes under the Plan. The Debtors believe that this classification scheme is consistent with the requirements of the Bankruptcy Code. The following is a summary of the classification and treatment of Claims under the Plan.

### A.  Statutory Fees

The Debtors have a statutory duty to pay all outstanding amounts that may be due to the Office of the United States Trustee (the "U.S. Trustee") upon Confirmation of the Plan, together with any fees due pursuant to 28 U.S.C. § 1930(a)(6) through the date of the entry of a Final Decree, conversion of the case or dismissal of the case.

The Debtors are current on all Statutory Fees as of the date hereof and do not believe that any Statutory Fees will be owed immediately prior to the Effective Date of the Plan. On the Effective Date, the Debtors will pay the U.S. Trustee the approximate sum of $600.00, which is the anticipated Statutory Fee on the amounts to be disbursed on the Effective Date.

All Statutory Fees that may come due after the Effective Date shall be paid when due by the Debtors until the entry of a Final Decree in this case, or until this case is converted or dismissed.

### B.  Administrative Claims

Administrative Claims are defined in the Plan as the costs and expenses of administration of the Debtors' Chapter 11 Case incurred on or after the Petition Date and (except as to post-

Petition Date obligations incurred and paid by the Debtors in the ordinary course) allowed by Final

Order under §§ 330 and 503(b) of the Bankruptcy Code. These Claims include, without limitation,

(a) any actual and necessary expenses of preserving the estate of the Debtors; (b) any indebtedness

or obligation incurred or assumed by the Debtors in connection with their day-to-day affairs or for

the acquisition or lease of property or for the procurement of services; (c) any costs and expenses

of the Debtors for the management, maintenance, preservation, sale or other disposition of any

assets; (d) any actual and necessary expenses of the administration and implementation of the Plan;

(e) any actual and necessary expenses of the administration, prosecution or defense of Claims by

or Claims against the Debtors and for Distributions under the Plan; and (f) any allowances of

compensation and reimbursement of expenses to the extent allowed by an order of the Bankruptcy

Court, whether arising before or after the Effective Date of the Plan.

Allowed Administrative Claims are unclassified under the Plan and holders of Allowed

Administrative Claims are not entitled to vote on the acceptance or rejection of the Plan. If there

is no significant litigation initiated or objections filed with respect to Confirmation of the Plan,

and the Plan is confirmed within the next thirty to ninety days, it is estimated that the Allowed

Administrative Claims to paid on the Effective Date comprise the following:

| Claimant | Amounts | Comments |
|---|---|---|
| Penachio Malara, LLP | $20,000.00 | Approximate Final Fees and Expenses to be Requested as Counsel to the Debtors |
| TOTAL | $20,000.00 | |

The actual amounts of the Allowed Administrative Claims may increase or decrease from

the amounts listed above prior to the Effective Date. In accordance with certain mandatory provi-

sions of the Bankruptcy Code, the Plan provides that holders of Allowed Administrative Claims

will be entitled to full payment of their Claims in Cash: (a) on the later of the Effective Date or the date such Claim is Allowed, or as soon thereafter as is practicable, or (b) on such terms as are mutually agreed to by the holder of an Allowed Administrative Claim and the Debtors. Other than those listed above, there are no known potential Administrative Claims against the Estate.

### C.  Classes of Creditors

#### 1.  Class 1 – Secured Claims – Unimpaired

Class 1 consists of the Allowed Secured Claims of (i) SPS and (ii) WVM against the Debtors. Allowed Class 1 Claims will be paid pursuant to the respective Post-Petition Date agreements between the Debtors and each Holder of a Class 1 Claim. Class 1 Claims are unimpaired under the Plan and not entitled to vote on the acceptance/rejection of the Plan.

#### 2.  Class 2 – Priority Claims – Unimpaired

Class 2 consists of the Priority Claims held by the IRS in the amount of $10,752.19. Holders of Allowed Class 2 Claims will receive payment in Cash in full on their Priority claims on the Effective Date The Debtors will make payment in full to the holders of Priority Claims plus statutory interest through the Disbursing Agent.. Class 2 Claims are unimpaired and not entitled to vote on the Plan.

#### 3.  Class 3 – General Unsecured Claims – Impaired

Class 3 consists of all Allowed General Unsecured Claims against the Debtors. Under the Plan, General Unsecured Claims include all Claims other than Statutory Fees, Administrative and Priority Claims and Secured Claims. The Allowed General Unsecured Claims in Class 3 total approximately $438,127.34, as set forth on Exhibit J. Holders of Class 3 Claims include Greentree and WVM with respect to its deficiency claim.

13

The Plan provides that the holders of Allowed Class 3 General Unsecured Claims will receive a monthly cash Distribution equal to their respective Pro Rata share of the Plan Cash after satisfaction of Statutory Fees, Allowed Administrative Claims and Allowed Class 2 Claims. The Debtors believe such Distribution will equal at least $40,000.00 (i.e., a recovery of approximately 10% on their Allowed Claims) over a period of 5 years. Holders of Class 3 Claims will not receive a Distribution until the following are paid in full: (a) Administrative Claims; (b) amounts owed to the Office of the United States Trustee; and (c) Class 2 Claims. The Debtors anticipate that holders of Class 3 Claims will not receive a Distribution until 12 months after the Effective Date. Class 3 is impaired under the Plan and, as such, the holders of Class 3 General Unsecured Claims are entitled to vote on the acceptance/rejection of the Plan.

## VI.  DISTRIBUTIONS UNDER AND IMPLEMENTATION OF THE PLAN

The Plan will be funded with $90,000.00 of which $15,000.00 will be paid from Cash on hand and $75,000.00 will be paid from the Debtors' future income. The Disbursing Agent will make payments to holders of Class 3 claims in at least quarterly installments.

## VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Under § 365 of the Bankruptcy Code, a debtor has the right, subject to approval of the Bankruptcy Court, to assume or reject executory contracts and unexpired leases. Although not defined in the Bankruptcy Code, an "executory contract" is usually described as a contract under which material performance (other than the payment of money) is due by each party. If an executory contract or unexpired lease is rejected under § 365 of the Bankruptcy Code, the "rejection" is treated as a breach of the contract or lease prior to the Petition Date giving rise to a pre-petition unsecured claim. In addition, "rejection" damages are limited in certain contexts under § 502 of

14

the Bankruptcy Code. If an executory contract or unexpired lease is assumed, the Debtors have the obligation to cure any default and to perform its obligations thereunder in accordance with the terms of such agreement.

To the best of their knowledge, the Debtors are not parties to any executory contracts or unexpired leases, but the Plan provides for the rejection of any that do appear. On the Effective Date, all executory contracts and unexpired leases are deemed rejected and the other party is entitled to file any Claim arising as a result.  The Plan has a 30 day bar date to assert any such Claim or such Claim will not receive any Distribution.

## VIII.  CAUSES OF ACTION

The Plan provides that any rights or Causes of Action that accrue to the Estate or the Post-Confirmation Debtors, including, without limitation, those arising under or pursuant to the Bankruptcy Code, shall remain assets of the Post-Confirmation Debtors. The Post-Confirmation Debtors may pursue, abandon, settle or release all reserved rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit, of the Post-Confirmation Debtors. In connection therewith, the Plan provides that any Distributions and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of the Post-Confirmation Debtors to pursue and prosecute any reserved rights and Cause of Action, including, without limitation, those arising under or pursuant to the Bankruptcy Code. After discussing the matter with counsel, the Debtors do not believe that any fraudulent conveyances existed prior to the filing of the bankruptcy petition and further believe that all pre-Petition Date payments were made in the ordinary course of business, thereby eliminating any potential recovery of preferential transfers. Moreover, the Debtors do not believe that any other Causes of Action exist.

## IX.  LEGAL EFFECTS OF CONFIRMATION OF THE PLAN

### 1.  Binding Effect

Pursuant to § 1141(a) of the Bankruptcy Code, once confirmed, the provisions of the Plan shall be binding upon the Debtors, the Post-Confirmation Debtors, all Claimants and other parties in interest, regardless of whether they cast a Ballot to accept or reject the Plan.

### 2.  Discharge

Pursuant to § 1141(d)(5) of the Bankruptcy Code, upon the completion of all Disbursements and payments required under the Plan, the Bankruptcy Court will enter a discharge of the Debtors from their debts that arose before the Confirmation Date. As such, the rights afforded in the Plan and the treatment of all Claims therein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever (including any interest accrued on such Claims), from and after the Petition Date against the Debtors and their Estate, except as otherwise expressly provided in the Plan, in § 1141 of the Bankruptcy Code, or in the Confirmation Order.

### 3.  Limitation of Liability in Connection with the Plan

**In accordance with § 1125(e) of the Bankruptcy Code, the Plan provides that neither the Debtors nor their counsel or agents, including the Disbursing Agent, shall have incurred or shall incur any liability to any holder of a Claim or any other Person for any act or omission in connection with, or arising out of, this Disclosure Statement, the pursuit of approval of this Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.**

16

**4. <u>Injunction</u>**

The Debtors will be seeking an injunction protecting the Debtors, the Post-Confirmation Debtors, their Estate and their assets, except as expressly provided in the Plan, until the entry of an order by the Court granting the Debtors a discharge upon performance of all their duties and obligations under the Plan. The injunction will be sought because, under the Bankruptcy Code [11 U.S.C. § 1141(d)(5)], where, as here, the debtor in a Chapter 11 case is an individual, confirmation of the plan does not discharge any debt provided for in the plan until the Court grants a discharge upon completion of all payments under the plan. Therefore, at the Confirmation hearing the Debtors will request the Court to enter a Confirmation Order providing that, as of the Confirmation Date, as to every holder of a debt or Claim against the Debtors, the holder of such debt or Claim shall be enjoined from interfering with the Debtors' ability to carry out the terms of the Plan. The order will further provide that in the event of a default by the Debtors under the Plan a creditor may make an appropriate application to the Court seeking relief from the injunction.

## X. <u>RETENTION OF JURISDICTION</u>

The Bankruptcy Court shall retain jurisdiction over this case under the provisions of the Bankruptcy Code, including, without limitation, § 1142(b) thereof, and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan are carried out and given effect. Without limitation by reason of specification, the Bankruptcy Court shall retain jurisdiction for the following purposes:

17

(a)     To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code and/or any other modification of the Plan after substantial consummation thereof;

(b)     To hear and determine:

   (i)     all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

   (ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtors including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

   (iii)   all rights or causes of action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;

   (iv)    applications for allowance of compensation and expense reimbursement of professionals for periods prior to the Effective Date;

   (v)     any and all applications, adversary proceedings and litigated matters;

   (vi)    to enter a final decree closing the Chapter 11 Case; and

   (vii)   to the extent not expressly provided for above, any and all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

## XI.  CONDITIONS TO CONFIRMATION, EFFECTIVE DATE AND CONSUMMATION OF THE PLAN

It is a condition to Confirmation of the Plan that (a) the Confirmation Order shall Approve in all respects all of the provisions, terms and conditions of the Plan, and (b) the Confirmation Order is satisfactory to the Debtors in form and substance. The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

(a)     The Bankruptcy Court shall have entered the Confirmation Order; and

(b)     The Confirmation Order shall have become a Final Order.

The Debtors may at any time, without notice or authorization of the Bankruptcy Court, waive condition(s). The failure of the Debtors to satisfy or waive such condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any actions taken by the Debtors). The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after substantial consummation of the Plan. In the event that the aforementioned conditions have not occurred or been waived on or before one-hundred-eighty (180) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court made on the request of the Debtors or any party in interest and an opportunity for parties in interest to be heard.

## XII.  IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE

The tax consequences of the Plan may impact the decision of the holder of a Claim in determining whether to accept or reject the Plan. Moreover, the tax consequences will vary depending upon the individual circumstances of the holder of a Claim.

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the holders of Class 3 General Unsecured Claims. The summary is provided for informational purposes only and is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof and all of which are subject to change, possibly with retroactive effect. This summary does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under

the Tax Code and also does not discuss any aspects of state, local, or foreign taxation. Additionally, a substantial amount of time may elapse between the Effective Date and the receipt of the final Distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated thereunder. No ruling will be sought from the Internal Revenue Service with respect to any of the tax aspects of the Plan and no opinion of counsel has heretofore been obtained by the Debtors as proponents of the Plan with respect thereto. Accordingly, each holder of a Claim should consult its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim under the Plan may have under federal, state and/or local tax laws, and the laws of any applicable foreign juris-dictions.

On the exchange of its Claim for Cash and/or property, each holder of a Claim in Class 3 will recognize a gain or loss measured by the difference between: (a) the aggregate fair market value of the cash and/or property received; and (b) such holder's tax basis in the Claim. To the extent that the cash and/or property received by a holder of a Claim is attributable to accrued interest on such Claim, the cash and/or property received will be deemed made in payment of such interest. Conversely, a holder of a Claim will recognize a deductible loss to the extent any accrued interest previously included in its gross income is not paid in full. The allocation for federal income tax purposes between principal and interest of amounts received in exchange for the discharge of a Claim at a discount is not clear. However, the Debtors intend to treat any amount received by holders of Claims as first allocated to principal.

Where gain or loss is recognized by a holder in respect of its Claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including but not limited to: (a) the nature or origin of the Claim; (b) the tax status of the holder; (c) whether the Claim constitutes a capital asset in the hands of the holder and how long it has been held; (d) whether the Claim was acquired at a market discount; and (e) whether and to what extent the holder had previously claimed a bad debt deduction with respect to the Claim. Any cash and/or property received by a holder of a Claim after the Effective Date may be subject to the imputed interest provisions of the Tax Code.

No statement in this Disclosure Statement should be construed as legal or tax advice. The Debtors and their counsel and accountants do not assume any responsibility or liability for the tax consequences the holder of a Claim may incur as a result of the treatment afforded its Claim under the Plan. Again, all holders of Claim are urged to consult with their own tax advisor regarding the potential tax consequences of the Plan.

CIRCULAR 230 DISCLOSURE: This tax discussion was written to support the promotion or marketing of the Plan. To ensure compliance with requirements imposed by the Internal Revenue Service, we are informing you that this discussion was not intended or written to be used, and cannot be used, by any person for the purpose of avoiding tax-related penalties that may be imposed on the taxpayer under the Tax Code. Taxpayers should seek advice based on their particular circumstances from an independent tax advisor.

### XIII.  GENERAL INFORMATION REGARDING CONFIRMATION PROCEDURE AND VOTING

#### A.  Plan Confirmation Process

**1.  Requirements**

The requirements for Confirmation of the Plan are set forth in detail in § 1129 of the Bankruptcy Code. The following summarizes some of the more salient requirements for such Confirmation:

**(a) Acceptance by Impaired Classes.** As discussed in further detail below, except to the extent that the "cramdown" provision of § 1129(b) of the Bankruptcy Code may be invoked, each Impaired Class of Claims must vote to accept the Plan. "Impaired" is defined in § 1124 of the Bankruptcy Code. A Claim is Impaired unless the Plan leaves unaltered the legal, equitable and/or contractual rights of the holder thereof. In order for the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims actually voting in the Impaired Class of Claims must vote to accept the Plan, or the Plan must qualify for "cramdown" of any non-accepting Class pursuant to § 1129(b) of the Bankruptcy Code.

**(b) Feasibility.** The Bankruptcy Court is required to find that the Plan is likely to be implemented and that the parties required to perform or pay monies under the Plan are likely to be able to do so. The Debtors believe that the Plan is feasible.

**(c) "Best Interests" Test.** The Bankruptcy Court must find that the Plan is in the "best interests" of Creditors. To satisfy this requirement, the Bankruptcy Court must determine that each holder of a Claim against the Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan money or other property which, as of the Effective Date, has a value not less than the

22

amount which such holder would receive if the Debtors' property were liquidated under chapter 7 of the Bankruptcy Code on that date. As set forth in the Liquidation Analysis attached as Exhibit G, the Debtors believe that it is clear that there would be no recovery by their unsecured creditors, in a Chapter 7 case, as compared to the Distributions under the Plan. Therefore, the Plan satisfies the "Best Interests" test.

**(d) Disposable Income Test: § 1129(a)(15).** The Bankruptcy Court must find that, in the event that the holder of an Allowed Unsecured Claim objects to the Plan, (i) the value of the property to be distributed under the Plan is not less than the amount of the Claim or (ii) the value of the property to be distributed under the Plan is not less than the Debtors' projected disposable income as defined in § 1325(b)(2) of the Bankruptcy Code to be received during the five (5) year period beginning on the date that the first payment is due. The Debtors believe that this test also is satisfied.

## B.  Confirmation Hearing

To confirm the Plan, the Bankruptcy Court must hold a hearing under § 1128 of the Bankruptcy Code to determine whether the Plan meets the Requirements of § 1129 of the Bankruptcy Code (the "Confirmation Hearing"). The Confirmation Hearing will be held at the United States Bankruptcy Court for the Southern District of New York, before the Honorable Robert D. Drain, Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York 10601 on September 20, 2017 at 10:00 AM.

## C.  Objections to Confirmation

Any party in interest wishing to object to Confirmation of the Plan must file such objection in writing and appear at the Confirmation Hearing to pursue same. Any objection must be filed

23

with the Clerk of the Bankruptcy Court, with a courtesy copy sent to the chambers of the Honorable

Robert D. Drain, and served upon the following parties <u>so as to be actually received</u> by September

13, 2017 at 5:00 PM: (i) Penachio Malara, LLP, 235 Main Street, Suite 610, White Plains, New

York 10601; and (ii) Office of the United States Trustee, 201 Varick Street, New York, NY 10014.

### D. <u>Voting on the Plan</u>

**1. <u>Who May Vote</u>**

Pursuant to § 1126 of the Bankruptcy Code, only the holders of Claims in Classes that are

Impaired under the Plan may vote on the Plan. In this case, only creditors in Class 3 may vote.

**2. <u>Classes Under the Plan</u>**

Under the classification scheme provided in the Plan, Class 1 consists of all Allowed

Secured Claims against the Debtors, Class 2 consists of all Allowed Priority Claims and Class 3

consists of all Allowed General Unsecured Claims against the Debtors. There are no other classes

of Claims under the Plan.

**3. <u>Impairment of Claims</u>**

Under the Plan, the Claims in Class 1 are unimpaired in that they will be paid pursuant to

the terms of their  post Petition Date loan modification agreements with the Debtors. The Claims

in Class 2 are unimpaired and will be satisfied in full with statutory interest on the Effective Date.

The Claims in Class 3 are Impaired in that Class 3 holders of Allowed General Unsecured Claims

will be paid their Pro Rata share of the Plan Cash over five (5) years. Accordingly, Class 3 creditors

are Impaired and entitled to vote to accept or reject the Plan.

24

This Disclosure Statement is being distributed for informational purposes to all Creditors and parties in interest without regard to their right to vote on the Plan. If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for that purpose.

**4.  Estimation of Claims for Voting Purposes**

Solely for the purposes of voting on the Plan, and for no other purpose, each holder of an Allowed General Unsecured Claim in Class 3 shall include on its Ballot the amount which such Claimant believes is due it from the Debtors. THIS AMOUNT SHALL NOT BE DEEMED IN ANY MANNER TO BE THE ALLOWED AMOUNT OF SUCH CLAIM. THE ALLOWED AMOUNT WILL ONLY BE DETERMINED AS PROVIDED IN THE PLAN. The amount set forth on the Ballot is solely for the purpose of voting upon the Plan and for the calculation of whether the Plan shall have been accepted in accordance with § 1129(a) of the Bankruptcy Code.

If a Claimant holds more than one Claim in any one particular Class, all Claims of such holder in such particular Class shall be aggregated and deemed to be one Claim for purposes of determining the number and amount of Claims in such Class voting on the Plan.

**5.  Binding Effect**

Whether or not a Claimant votes on the Plan it shall be bound by the terms of the Plan if the Plan is confirmed by the Bankruptcy Court. Unless a Ballot is completed and returned in accordance with the approved Bankruptcy Court procedures, a Claimant will not be included in the vote for purposes of accepting or rejecting the Plan or for purposes of determining the number of Persons voting on the Plan.

**6.  <u>Voting Procedure and Deadlines</u>**

In order for your vote to accept or reject the Plan to be tabulated, you must complete, date, sign and properly mail the enclosed Ballot to counsel to the Debtors at the following address: Penachio Malara, LLP, 235 Main Street, Suite 610, White Plains, New York 10601 or by email to apenachio@pmlawllp.com.

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that signed, original Ballots for the acceptance or rejection of the Plan must be <u>received</u> by counsel to the Debtors at the address set forth above on or before September 13, 2017 at 5:00 p.m. (Prevailing Eastern Time). You may transmit your vote by mail, facsimile transmission or e-mail. Once you have delivered or mailed your Ballot, you may not change your vote, except for cause shown to the Bankruptcy Court after notice and a hearing. Ballots or votes on the acceptance or rejection of the Plan cannot be transmitted orally.

Any timely Ballot received by counsel to the Debtors that does not identify the Claimant, or is unsigned, or which does not indicate acceptance or rejection, or (unless Claimant's Claim is listed as undisputed, not contingent and fully liquidated in the Debtors' current schedules of liabilities) does not include the amount believed to be owed such Claimant, shall not be counted as a vote, either to accept or reject the Plan.

You are urged to complete, date, sign, and promptly mail the enclosed Ballot. Please be sure to complete the Ballot properly and legibly identify the amount of your Claim and the name of the Claimant.

26

## XIV.  <u>FEASABILITY OF THE PLAN</u>

In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors unless contemplated by the Plan. As discussed above, the funds needed to make the Distributions required to be made under the Plan will be generated by future earnings.

For purposes of determining whether the Plan meets the "feasibility" requirements of the Bankruptcy Code, the Debtors and their professionals analyzed the Debtors' future prospects, future income and future liabilities and incorporated their findings into the Budget attached hereto as Exhibit F. As reflected therein, the Debtors believe that, after the restructuring of their debt obligations as provided in the Plan, the Debtors will have the funds sufficient to make the future Distributions called for under the Plan while remaining current on their ordinary debts. Accordingly, the Debtors believe that confirmation is not likely to be followed by the liquidation or further financial reorganization of the Debtors.

## XV.  <u>BEST INTERESTS</u>

Notwithstanding acceptance of the Plan by the requisite number of impaired Classes of Claims, the Bankruptcy Court must independently determine that the Plan provides each member of each impaired Class of Claims a recovery that has a value at least equal to the value of the Distribution that each such creditor would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

The Debtors believe that the Plan is in the best interests of creditors because it provides for an orderly and expeditious Distribution of the Debtors' assets and projected disposable income, thus maximizing the recovery to creditors. Under the most likely scenario presented under the Plan, holders of General Unsecured Claims will receive a Distribution of approximately 10% of the Allowed Amounts of their Claims. In contrast, in the event of a liquidation of the Debtors under chapter 7 of the Bankruptcy Code, it is likely that creditors would receive substantially less on account of their Allowed Claims because: (a) the Debtors' assets, including their post Petition Date income are substantially exempted from recovery in bankruptcy; (b) the substantial additional expenses of administration, including a chapter 7 trustee's commissions and fees for such trustee's counsel, accountants, and other professionals likely to be retained, would be incurred with priority over Allowed General Unsecured Claims, diluting their recovery; and (c) any Distribution on Allowed General Unsecured Claims would likely be substantially delayed while expenses of administration of the estate would continue to grow. In order to illustrate this point, the Debtors and their professionals have prepared the Liquidation Analysis attached hereto as <u>Exhibit I</u>. Thus, the Debtors respectfully submit that the Plan is in the best interests of creditors.

## XVI.  <u>ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN</u>

The Debtors have evaluated alternatives to the Plan, including alternative Plan structures and terms; the adoption of a plan of liquidation, and the pursuit of various litigation strategies. While the Debtors have concluded that the Plan is the best alternative and will maximize recoveries by holders of Allowed Claims, if the Plan is not confirmed, the Debtors or any other party-in-interest could attempt to formulate and propose a different plan or plans of reorganization. Further,

if no plan of reorganization can be confirmed, the Debtors' Chapter 11 case may be dismissed or converted to a chapter 7 case. In a liquidation case under chapter 7, the proceeds of the liquidation would be distributed to the respective creditors of the Debtors in accordance with the priorities established by the Bankruptcy Code and contractual priorities. However, the Debtors believe holders of Allowed Claims would receive substantially less under chapter 7 because of the administrative costs and commissions associated with a chapter 7 trustee (discussed above) and because of the liens, encumbrances and exemptions applicable to the Debtors' assets. Accordingly, the Debtors believe that Confirmation and consummation of the Plan is preferable to the alternatives described above.

## XVII.  <u>RECOMMENDATION AND CONCLUSION</u>

For all of the reasons set forth in this Disclosure Statement, the Debtors believe that the Confirmation and consummation of the Plan is the best means available to provide the greatest level of recovery to creditors in accordance with their legal and contractual rights. Consequently, the Debtors urge all holders of Allowed Claims in Class 3 to vote to accept the Plan and to evidence their acceptance by duly completing and returning their Ballots so that they will be received on or before 5:00 p.m. on September 13, 2017.

Dated: White Plains, New York
        August 10, 2017

                                        Respectfully submitted,

                                        PENACHIO MALARA, LLP

                                        ___/s/ Anne Penachio___
                                              Anne Penachio
                                        Counsel for Debtors
                                        235 Main Street Suite 610
                                        White Plains, NY 10601
                                        (914) 946-2889